MR. JUSTICE SHEEHY
delivered the Opinion of the Court.
In this case, we determine that the reciprocal pretrial discovery statutory provisions in criminal cases, for the purposes of this case and when applied as herein directed, are amenable to the state and federal constitutions and not barred by the provisions of the state and federal constitutions herein specified.
This is an original proceeding in this Court. Relator James Carkulis stands charged with the commission of a crime in the District Court, Thirteenth Judicial District, County of Yellowstone. The State had moved the District Court for an order requiring reciprocal discovery by the defendant under Section 46-15-323(4), MCA (1985). In an order dated December 20, 1985, the District Court granted the State’s motion for pretrial discovery but made no provision in the order for sanctions in the case of noncompliance.
On January 15, 1986, Carkulis filed in this Court a petition for writ of supervisory control or writ of certiorari (Cause No. 86-026 in this Court) relating to the December 20, 1985 District Court order. We ordered a response, and received an answer and briefs from the Attorney General of the State of Montana; the County Attorney of Yellowstone County; and amici curiae from the Moses Law Firm of Billings, Montana; Ungar Law Firm of Bozeman, Montana; and the Montana County Attorneys Association, through its president Mike McGrath of Helena, Montana. However, on December 11, 1986, after oral argument, we denied the petition for writ of supervisory control without prejudice upon the grounds that the District Court *268 had imposed no sanctions, and might never impose sanctions, and that there was an adequate remedy by appeal.
Thus, the matter returned to the District Court. There, on March 9, 1987, Carkulis moved the District Court to reconsider its order of December 20, 1985. On April 9, 1987, the District Court issued its order denying Carkulis’ motion to reconsider and further ordering that unless the defendant disclosed the materials set out in the December 20, 1985 order by May 1, 1987, he would “be precluded from offering the same at trial.” The time for compliance by the defendant has passed and neither he, his counsel nor agents, have complied with the pretrial discovery order of the District Court. On May 4, 1987, Carkulis, as relator, filed his second petition for writ of supervisory control of writ of certiorari in this Court and thus the issue is before us again.
This time, a sanction has been imposed against the defendant, the most drastic available to the District Court under Section 46-15-329, MCA, that of barring him from offering evidence not disclosed before May 1, 1987.
The first problem is whether this Court should consider the issuance of a writ, either of supervisory control, or of certiorari. Under Section 27-25-102(2), MCA, if a district court, exercising judicial functions, has exceeded its jurisdiction, and if in the judgment of this Court there is no plain, speedy or adequate remedy, certiorari will lie. Section 27-25-102(2), MCA. In like manner, when a cause of action or a right has arisen under conditions making due consideration in the trial court and due appeal to this Court an inadequate remedy, or when supervision of a trial court other than by appeal is deemed necessary and proper, a writ of supervisory control may issue. Rule 17(a), M.R.App.P. A petition seeking original jurisdiction in this Court must make a showing of the inadequacy or unavailability of any other remedy, either in the District Court or by appeal to this Court. Crist v. Boyd, District Court (1976), 172 Mont. 38, 560 P.2d 531; Petition of Waite (1964), 143 Mont. 321, 322, 389 P.2d 407, 408.
In the first proceedings brought by Carkulis in this Court, the Attorney General, in his memorandum in support of his response, agreed we should take jurisdiction of the proceedings, and pointed out a proper reason:
“For example, if the court were to decline to take jurisdiction of this application, relator would presumably comply with the District Court’s disclosure order. Should relator then be convicted and sue *269 cessfully appeal his case, it might prove unfair to him should a new trial be ordered, since the State would have the benefit of the very information which relator believes he should not be required to disclose. Once disclosures are made, they cannot be retracted. See Wardius v. Oregon, 412 U.S. 470, 478, [93 S.Ct. 2208, 2213-14, 37 L.Ed.2d 82] (1973).”
Under the record as it is now presented to us in this second application by Carkulis, since he is barred from offering evidence pertaining to the materials sought in pretrial discovery, he may be entirely precluded from offering a defense. He must risk conviction in order to effect an appeal, and then risk the uncertainty of our decision on appeal. Without our intervention now, defendant has a Hobson’s choice: Go back to the District Court, comply with the pretrial discovery, hope that the District Court will rescind its order barring the evidence and rely on a successful appeal; or, alternatively, stand pat, risk conviction, and the uncertainty of success on appeal. Moreover, the District Court order is binding not only on the defendant, but upon his counsel and their agents. They are also at risk for noncompliance through contempt proceedings against them.
Counsel for the State in prosecuting defendant is likely to have a dilemma here with respect to the law: There is a split of authority among neighboring states as to the legality of such pretrial discovery provisions. Unless we set the course in this case of first impression, there are no Montana guideposts for counsel advising their clients with respect to pretrial discovery in criminal cases.
Accordingly, we accept jurisdiction to determine if supervisory control is proper in this matter.

The District Court’s Order

On December 20, 1985, the District Court entered its order for pretrial discovery which included the following provisions:
“IT IS HEREBY ORDERED that the defendant, James Carkulis and his counsel or agents, make the following materials and information available to the State without delay for examination and reproduction, subject to constitutional or statutory limitations:
“(1) the names and addresses of all persons, other than the defendant, whom he in good faith knows he will call as witnesses at trial, and copies of all statements made by them related to this case;
“(2) the names and addresses of any expert witnesses whom he in good faith knows he will call at trial, and summaries of the testimony he expects the witnesses to give at trial;
*270 “(3) all papers, documents, photographs and other tangible objects which the defendant in good faith knows will be used as exhibits at trial; and
“IT IS FURTHER ORDERED that the defendant shall promptly notify the State of the existence of any additional information or material referred to in the foregoing that is discovered by the defendant after this Order and make such information or material available for examination and reproduction without delay.”
On April 9, 1987, the District Court, by a further order, supplemented the foregoing provisions by providing that if the defendant Carkulis did not disclose the materials set out above by May 1, 1987, he would “be precluded from offering same at trial.”

Issues Raised By Defendant

The defendant maintains that the District Court’s orders violate his rights secured by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article II, Sections 11, 17, 24 and 25 of the 1972 Montana Constitution.

The Applicable Statutes

The legislature adopted in 1985 several provisions relating to reciprocal pretrial discovery in criminal cases. Ch. 202, Laws of Montana (1985). The provisions relating to pretrial reciprocal discovery are now embodied in Sections 46-15-321 through 46-15-329, MCA. In general, these statutes contain applicable definitions (Section 46-15-321); requirements for disclosure by the prosecution (Section 46-15-322); requirements for disclosure by the accused (Section 46-15-323); materials not subject to disclosure (Section 46-15-324); a continuing duty to disclose (Section 46-15-327); a provision for excision or protective orders (Section 46-15-328); and provisions for sanctions in the case of noncompliance (Section 46-15-329).
The orders of the District Court in this case are based on provisions contained in Section 46-15-323, MCA. The important subsections are:
“(4) Simultaneously with the notice of defenses submitted under Subsection (3), the defendant shall make available to the prosecutor for testing, examination, and reproduction:
“(a) the names and addresses of all persons, other than the accused, whom he will call as witnesses at trial, together with all statements made by them in connection with a particular case; and
“(b) the names and addresses of experts whom he will call at trial, *271 together with the results of the physical examinations, scientific tests, experiments, or comparisons, including all written reports and statements made by them in connection to the particular case; and,
“(c) a list of all papers, documents, photographs, and other tangible objects that he will use at trial.
“(5) The defendants obligation under this section extends to material and information within the possession or control of the defendant or his attorneys or agents.”

Disclosure of Witnesses and Statements

Carkulis attacks the provisions of Section 45-15-323(4)(a), MCA, which requires the disclosure of witnesses the defendant will call at trial, together with all statements made by them in connection with this particular case.
The word “statements” found in the statute may in itself be over-broad. We construe the word statements to include tapings, transcriptions, writings or other means used to memorialize the witness as to his observation or impression of a situation or event, and which may be used either to refresh the recollection of the witness or to impeach him at trial.
Carkulis attacks this statute on the grounds that it violates the state[1] and federal [2] rights against self-incrimination and deprives him of due process.[3]
With respect to the defenses of alibi and self-defense and the former defense of insanity, this Court has already spoken and approved the requirement for a production of a list of witnesses to be used at trial. State ex rel. Sikora v. District Court (1969), 154 Mont. 241, 462 P.2d 897. Sikora arose under former statute Section 46-15-301, now repealed, (Ch. 202, Laws of Montana (1985)), but the provisions of which have been subsumed in Part 3, Title 46, Criminal Procedure. In Sikora, this Court declared that not all evidence obtained from a defendant is privileged under the Fifth Amendment of the United States Constitution. The production by the defendant of a list of his witnesses relating to those defenses was approved on the grounds that such production merely enabled the prosecution to perform its function at trial more effectively, that the right to remain silent was not violated because production was not required if the witnesses would not testify, and that the defendant was not required to reveal anything more than he would voluntarily and without compulsion give at trial. This Court also found protection for the defendant in Sikora in that the statute was directed to the pur *272 pose of giving notice to the state and that “the defendant who chooses to remain silent until later than the statute indicates may do so and for good cause may still interpose his defenses.” 154 Mont. at 251, 462 P.2d at 902. The logic of Sikora now controls the additional defenses now listed in Section 46-15-323(3) for which the defendant must provide written notice and a list of the witnesses pertaining thereto that he will call at trial.
The United States Supreme Court in Williams v. Florida (1970), 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446, upheld a state statute requiring the disclosure of an alibi defense and alibi witnesses to the state prior to trial as not violating the federal right against self-incrimination. Williams is essentially grounded on the “accelerated disclosure” theory, that is, that at trial, the defendant would have to reveal his alibi and his witnesses relating thereto, and that accelerating the disclosure does not affect his constitutional rights against self-incrimination. Nonetheless, in Williams, Justice Black took an opposite tack:
“[Federal constitutional rights] are designed to shield the defendant against state power. None are designed to make convictions easier and taken together they clearly indicate that in our system the entire burden of proving criminal activity rests on the state. The defendant, under our constitution, need not do anything at all to defend himself, and certainly cannot be required to help convict himself. Rather he has an absolute, unqualified right to compel the state to investigate its own case, find its own witnesses, prove its own facts, and convince the jury through its own resources. Throughout the process the defendant has a fundamental right to remain silent, in effect challenging the state at every point to: “ ‘Prove it!’ ”
399 U.S. 78, 112, 90 S.Ct. 1893, 1912, 26 L.Ed.2d 446, 483 (Black, J., dissenting).
Justice Black’s argument for the rights of an accused has not, for the most part, been followed by other federal and state courts. More and more, there have been declarations that a criminal trial is a “search for truth,” that criminal trials are not a game of surprise, and that the right of discovery is a “two way street.” Montana has followed that tack since Sikora. It is clear that the accused must give the State pretrial notice of affirmative defenses, and produce for the State a list of the witnesses he will call to establish the defense.
The question that remains regarding witnesses is whether the de *273 fendant must also make a pretrial disclosure of witnesses that he will call in his general defense of the crime charged. Immediately, the Sikora ruling comes to the fore: the defendant is merely revealing in advance of trial what eventually he would have to reveal during the trial. Under the order of the court in this case, and under the statute, Carkulis does not have to reveal to the State whether he as a defendant will or will not take the stand in his defense. The requirement is not self-incriminatory as to him. With respect to other witnesses for his general defense, the logic of Sikora and Williams seems to apply: their names will be revealed in due course in any event. It is certain that if, without prior disclosure, a devastating surprise witness for the defendant were to testify, the State would obtain from the trial judge a continuance in order to meet the testimony. Pretrial revelation may avoid surprise, aid the administration of the trial courts and provide an orderly resolution of the charge. On those grounds, and because we see protections for the defendant in other provisions of the discovery statutes, we hold that the defendant must provide to the State a list of all witnesses he intends to call at the trial. The District Court subjected this requirement to “constitutional or statutory limitations.”
We turn now to the question of whether the defendant must also surrender to the State copies of statements obtained by the defendant or his agents and counsel statements of all witnesses he will call at trial.
The State contends that the discovery statutes requiring copies of statements merely provide for the accelerated production of evidence that the defendant would voluntarily and without compulsion provide at trial. The State also argues that the protections provided by the Fifth Amendment and Article II, Section 25 of the Montana Constitution apply only to the statements of a criminal defendant. The privilege does not extend to the testimony or statements of third parties. Therefore, the State contends that the provisions of Sections 46-15-323(3) and (4), MCA, are constitutionally sound.
Carkulis and amici contend, however, that the production of such items may be incriminating in that they could provide the State with a “link in the chain” of evidence sufficient to establish a prima facie case. That, they contend, would have the effect of lessening the burden of beyond a reasonable doubt and in effect violate the accused’s right to remain silent.
In considering the question of pretrial production by an accused of prospective witness statements relating to his general defense, we *274 are leading into a field where there is little authority to guide us. For one thing, there is a critical difference between the discovery and inspection rules provided under the federal system and those of the Montana criminal discovery statutes. Under Rule 16, Fed.R.Crim.P., any discovery must first be defendant triggered. Discovery from the defendant as to documents and tangible objects, and reports of examination and tests, are permitted only if defendant has requested from the government the same kinds of disclosure. Rule 16(b)(1) (A), (B), Fed.R.Crim.P. Except for these, the federal rule does not authorize the discovery or inspection of reports, memoranda or other internal defense documents made by the defendant or his attorneys in connection with the investigation or defense of the case, or statements made by the defendant or by government defense witnesses or by prospective government or defense witnesses. Rule 16(b)(2), Fed.R.Crim.P. In fact, the Congress specifically declined to provide for the discovery of witness lists in Rule 16. Moore’s Federal Practice (1986 Rules Pamphlet at 231).
In addition, Rule 12.1, Fed.R.Crim.P. provides for a notice of alibi, but it is government triggered. Rule 12.1 requires the government to provide the defendant with a demand stating the time, date and place where the alleged offense was committed whereupon the defendant must serve within 10 days a notice of intention to offer the defense of alibi and within an additional 10 days provide a list of the names of witnesses who establish the alibi. The defendant must also state the specific place at which he claims to have been at the time of the alleged offense. Montana’s statutes have no such provisions.
Thus, the State has relied on a number of cases from the federal system which are not on point. In those cases, the defendants are not required to produce statements until the government has completed its case and if the statements are being used by the defendant in his defense or to impeach a witness. See, for example, United States v. Nobles (1975), 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141.
Two sister states have refused to permit a pretrial disclosure of witness lists or statements. One is Alaska, expressing its decision in Scott v. State (Alaska 1974), 519 P.2d 774. There the Superior Court, apparently without direct statutory authority, had required a defendant charged with rape to disclose to the prosecution the names of all prospective defense witnesses other than the defendant himself, the production for inspection and copying of any written or recorded statements of those witnesses, and advance notice of an *275 alibi defense. The defendant sought interlocutory appellate review in the Alaska Supreme Court which was granted. The Supreme Court struck down the Superior Court order, including the requirements relating to the alibi defense. The Alaska Supreme Court decided to interpret the Alaska Constitution more broadly than the United States Supreme Court construed the Fifth Amendment in Williams v. Florida, supra. It determined that the pretrial transfer of witness lists and witness statements was testimonial because a document containing such facts transmitted from one party to another constituted a communication of cognizable information from one source to another. The Supreme Court was of the opinion that such information may in some instances tend to be incriminating; and because a court order was involved, it found that the production was compelled. Thus, in the opinion of that Supreme Court, the criteria for self-incrimination was met in the Superior Court order.
At odds with the Alaska decision in Scott v. State, supra, is the rationale of the District Court in Carkulis’ case. While agreeing that the protection against self-incrimination applies to testimonial or communicative evidence, State v. Armstrong (1980), 189 Mont. 407, 421, 616 P.2d 341, 349, the District Court held that the disclosure required by the court order was not compelled, State v. Anderson (Mont. 1984), [211 Mont. 272,] 686 P.2d 193, 197, 41 St.Rep. 1357, 1360. The District Court held that there was no compulsion in the Montana statute because Carkulis was not compelled to reveal that which he did not intend to reveal at trial anyhow.
California also held against the disclosure of witness lists and statements in In Re Misner (1985), 38 Cal.3d 543, 213 Cal Rptr. 569, 698 P.2d 637. In that case the California history of prosecutorial discovery (advocated by the late J. Traynor) was examined, beginning with Jones v. Superior Court (1962), 58 Cal.2d 56, 22 Cal. Rptr. 879, 372 P.2d 919; through the backing away from Jones in Prudhomme v. Superior Court (1970), 2 Cal.3d 320, 85 Cal. Rptr. 129, 466 P.2d 673; down to the facts before it in Misner. That case involved the constitutionality of a statute which permitted the prosecution to discover from the defendant or his counsel, following testimony under direct examination of defense witnesses other than the defendant, other statements made by those witnesses. The California appellate court examined Williams v. Florida, supra, and United States v. Nobles, supra, but rested its decision on California state law. It determined that the California statute was directed only to prior statements of witnesses produced by the defense and though limited to *276 the scope of their direct testimony, the statute obviously contemplated that the discovery permitted by the statute would provide the state with evidence to impeach the defense witnesses. Misner determined that it violated a defendant’s privilege against self-incrimination to extract impeachment evidence from him.
Further in Misner, the prosecution argued that even if the privilege against self-incrimination covered prior statements of defense witnesses, the defendant waived the privilege by putting the witnesses on the stand, at least to the extent of the permissible scope of cross examination. The California Supreme Court said the state could not rely on this rule, stating:
“. . . while it may be true that by putting witnesses on the stand the defendant waives any right to object to their vigorous cross examination by the prosecution, he does not waive his right to refuse to supply the prosecution with the means to conduct that cross examination.”
698 P.2d 637, 647.
Within the last quoted sentence of the Misner court, we find the kernel of difference between California law and Montana law on this subject. In Sikora, supra, we quoted with approval (admittedly dictum, but bearing on the Montana view of the law) from People v. Damon (1969), 24 N.Y.2d 256, 299 N.Y.S.2d 830, 247 N.E.2d 651, as follows:
“It is argued first that there was a possible violation of the right against self-incrimination. We do not agree. These statements were not those of the defendant but of witnesses offered by the defendant. In no sense can it be said that he is being compelled to produce incriminating statements of his own. The privilege against self-incrimination applies only to evidence of a testimonial or communicative nature obtained from the defendant himself.”
154 Mont. 241, 249, 462 P.2d 897, 901.
While admitting the question is close, and with deference to sister states holding otherwise, we hold that the pretrial disclosure by the defendant of statements of witnesses he intends to call at trial does not offend his rights against self-incrimination under state or federal grounds. Undoubtedly at trial time, such statements would be used to refresh the recollection of defense witnesses. As such they ought as well to be available to the state. Our holding is also based on the reciprocity provided in the state’s statutes, and on the limitation of disclosure to those statements only of witnesses defendant intends to call at trial.

*277
Disclosure of Statements of Experts

What is said foregoing applies with equal force to pretrial disclosure of prospective experts as witnesses. There is however, a necessary caution to be stated.
In the preparation of and the examination by such experts, the defendant may be encouraged to communicate freely and candidly with them. Thus experts’ reports, notes and other written materials may contain potentially incriminating information to which the state should not be entitled. Malloy v. Hogan (1964), 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Particularly, the reports of psychologists and psychiatrists may contain such incriminatory statements.
In ordering the exchange of disclosure of statements of expert witnesses therefore, it may be expedient for District Courts to weigh the issues of self-incrimination carefully under the protective procedures hereafter discussed.
It is noted that in this case the order of the court is carefully limited. Carkulis is ordered to give summaries only of the testimony he expects the expert witnesses to give at trial.

Disclosure of Documents

Carkulis has been ordered by the District Court to disclose to the state “all papers, documents, photographs, and other tangible objects” which he in good faith knows will be used as exhibits at the trial.
Carkulis claims that this order violates the Fourth Amendment of the Federal Constitution[4], and Article II, Section [5] of the 1972 Montana Constitution.
Carkulis contends that the order is a compulsory production of documents and so it violates his Fourth Amendment rights within the meaning of Boyd v. United States (1886), 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. He argues that the seizure is void because the description of the place to be searched and things to be seized is not made with particularity, that the request is not made on probable cause, and that it is not made on written affirmation. Article II, Section 11, 1972 Montana Constitution.
The State counters that the authority of Boyd v. United States, supra, has been diminished, and there is no authority to support Carkulis that the Fourth Amendment applies to pretrial discovery.
The case which the State contends watered down the holding of Boyd, supra, is Hale v. Henkel (1906), 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652, wherein it was stated that “the Fourth Amendment was *278 not intended to interfere with the power of Courts to compel, through a subpoena duces tecum, the production, upon a trial in court, of documentary evidence.” However, the United States Supreme Court also said in Hale that an order for the production of book and papers may constitute an unreasonable search and seizure within the Fourth Amendment whether the seizure occurred under a search warrant or a subpoena duces tecum. In Hale, the Supreme Court decided that the subpoena duces tecum was far too sweeping because of the vast extent of documents required to be produced from many different places under the subpoena.
Here the order of the court is moderate in comparison to the subpoena duces tecum in Hale. Carkulis is required to produce, for examination or reproduction, papers, documents, photographs, and tangible objects which he “in good faith knows will be used as exhibits at trial.” The order in its terms is definitive, and cannot be a burden upon the defendant, since he will use those same objects at trial. In consideration of the language used by the District Court order, we hold it meets the test of reasonableness, under Fourth Amendment tests, and is equally amenable to Article II, Section 11 of the 1972 Montana Constitution. Carkulis’ arguments that the place to be searched or the things to be seized or that probable cause has not been set forth nor supported by oath or affirmation, are state constitutional requirements for the issuance of a warrant. In this pretrial discovery procedure, the use of a warrant is not involved. For the efficient administration of justice, the court’s order here is directed to the production of objects for examination and reproduction which must eventually come to light at trial. Even if the order for production is regarded as a seizure of sorts, it is nevertheless reasonable. The constitutional prohibitions are against unreasonableness.

Due Process

Carkulis argues that the imposition of sanctions if he fails to abide by the discovery order of the District Court deprives him of due process. The due process provision of the Fifth Amendment is applicable to state action through the Fourteenth Amendment. Malloy v. Hogan (1964), 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653.
The grinding surface of the due process question in this type of issue is whether reciprocity for discovery exists. In Williams v. Florida, supra, the United States Supreme Court indicated that nothing in the due process clause precludes any states from using broad dis *279 covery procedures designed to increase evidence available to both sides in criminal cases and to enhance goals and fairness in the adversary system. In Wardius v. Oregon (1973), 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82, the United States Supreme Court reaffirmed this point in reversing a conviction of an Oregon defendant based on an Oregon statute. The Oregon defendant had not given notice to the prosecution that he intended to use the defense of alibi and at trial his alibi witness as well as his own testimony was stricken. He appealed his conviction on the ground that he had been deprived of due process because under the Oregon statute there is no provision for reciprocal discovery, that is that the accused had not the same rights of pretrial discovery as did the State. The U.S. Supreme Court held that the Oregon statute did not provide reciprocal rights of discovery and that thereby due process was violated.
The statutes now enacted in this State relating to pretrial discovery in criminal cases provide for full discovery within constitutional and privilege limitations to both sides. After this Court approved the requirement that the defendant give notice of an alibi defense in Sikora, supra, the case went back to the District Court where the defendant, Radford, was convicted. He brought an action for habeas corpus in the federal system, in the United States District Court for the District of Montana. There the United States district judge upheld the notice of alibi statute and he was affirmed on appeal in the Ninth Circuit. Radford v. Stewart (9th Cir. 1973), 472 F.2d 1161, 1162. The circuit court said:
“The State operated in good faith in this action and did not use the discovery required merely to build its case. No investigation was made of the witnesses named by the defendant. In fact, defendant was allowed, without objection, to call two witnesses whose names had not been noticed. Defendant also knew prior to trial of the prosecution’s only rebuttal witness (a psychiatrist). Judge Battin thus found that under the facts of this case reciprocity existed.”
Since under the cases due process in this kind of case hinges on reciprocity, and reciprocity is provided in the statutes, Carkulis’ due process argument falls.
This Court noted the presence of reciprocity in the statutes which were precursors to the present pretrial discovery statutes as providing due process in State v. Bentley (1970), 155 Mont. 383, 472 P.2d 864.

Obligation of Defense Counsel Work-Product

*280 The order of the District Court for pretrial discovery is binding not only upon Carkulis himself, but upon his agents and attorneys. Questions arise as to the impact of such an order upon the attorney-client relationship and its effect upon the work-product rule.
First, the work-product rule. It is a qualified evidentiary privilege recognized in Hickman v. Taylor (1947), 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed 451. The work-product rule is different from the attorney-client privilege. The latter protects communications between the client and his attorney or the attorney’s agent. The work-product doctrine protects against the disclosure of specific documents and tangible items prepared in actual anticipation of litigation or for trial. The exemption from discovery is intended to insure the privacy of a party’s attorney from unnecessary intrusion by opposing parties or counsel. However, the “privilege” is not absolute. It is not personal to the client. It can be waived by an attorney’s course of conduct. See People v. Small (Colo. 1981), 631 P.2d 148, 159.
There is no doubt that if an attorney uses at trial a statement he obtained and prepared in anticipation of litigation in interrogating or cross examining a witness, the full statement, even though work-product, must be produced at the demand of the other side. See People v. Small, supra. By the use of the statement at trial, the attorney has waived the work-product protection, since the material in the statement has become substantive evidence. On this ground Justice Byron R. White specially concurred in Williams v. Florida, supra, he contended that the work-product rule does not apply to evidence, and therefore no waiver of work-product rule by the attorney was involved. The majority in Williams held the attorney had waived the work-product rule by using the statement to impeach on cross-examination. In any event, the statement becomes discoverable when used at trial.
The order of the District Court in this case was tailored to require the plaintiff and his counsel and agents to produce all documents and tangible objects which the defendant in good faith knows will be used as an exhibit at the trial. If the defendant knows that such objects will be used at trial, whether we regard the same as evidence, or the use of them as a waiver of the work-product doctrine, since they are discoverable in any event, the timing of the discovery is the only question involved. The logic of Williams, that “accelerated disclosure” is permissible if the objects will come to light in any event applies here. If counsel, in representation of this client, acquires work-product objects which the defendant knows in *281 good faith will not be used at trial, they are not subject to discovery under the order of the court. Further they are protected by the provisions of Section 46-15-332, MCA, that all matters which are privileged upon the trial are privileged against disclosure in the discovery procedure.
A close question may arise in some instances as to whether servance of the discovery order by a defendant’s attorney in the production of documents or tangible objects would in themselves incriminate his client. It appears to us that there are safeguards in that a protective order may be sought under Section 46-15-328, MCA, as we will hereafter discuss.

Excision and Protective Orders

Section 46-15-328, MCA, allows any party to obtain orders denying, deferring, or regulating pretrial discovery. The statute provides for excision of nondiscoverable material and for applications to the district court in camera for protective orders.
Carkulis contends that Section 46-15-328, MCA, violates his right against self-incrimination because Subsection 3 requires the counsel of both parties be present during all protective order presentations.
“A statute derives its meaning from the entire body of the words, taken together.” Wyse v. District Court of Fourth Judicial District (1981), 195 Mont. 434, 636 P.2d 865, 866. [38 St.Rep. 2005,] Section 46-15-328(1), MCA, gives the District Court the power to regulate disclosure:
“(1) Upon a motion of any party showing good cause, the court may order . . . that any other disclosure as required by Sections 46-15-321 through 46-15-329(b) . . . be . . . regulated when it finds:
“(b) that the risk cannot be eliminated by a less substantial restriction of discovery rights.”
It is possible for occasions to arise where applications for protective orders are made to the court, and where if counsel for all parties are present, “the cat is then out of the bag, never to be recaptured.” Subsection 1 in the statute gives the court the flexibility to employ appropriate protection procedures. The provisions of Subsection 3, that the court may permit the moving party to present the material or information for the inspection of the judge alone in the presence of all counsel, merely provides one method of accomplishing the legislative purpose. It is not exclusive. It does not exclude ex parte presentations. The District Court can exert its judicial author *282 ity in its adjudicatory function so as to protect constitutional and statutory rights.
Among the inherent powers of the court is “the right of the court to receive information in private so that it can intelligently assess its adjudicatory function.” Phoenix Newspapers, Inc. v. Superior Court (1983), 140 Ariz. 30, 680 P.2d 166, 169. The determination of whether material is discoverable or not is a necessary facet of the adjudicatory function. People v. Stevens (1981), 102 Ill.App.3d 773, 58 Ill.Dec. 389, 430 N.E.2d 331, 333.
The United States Supreme Court has never squarely addressed the issue of in camera hearings conducted ex parte. Yet, it has seen fit to approve of such procedure by implication. See Taglianetti v. United States (1969), 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (approving of in camera inspection of unlawful electronic surveillance case as not being violative of the Fourth Amendment where the defendant was provided with all tapes in which he took part in the conversation); Dennis v. United States (1966), 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (recognition of in camera procedure when national security or clear-cut threat to individuals is identified).
While the 1975 Amendments to the Federal Rules of Criminal Procedure were pending, the United States Supreme Court proposed a mandatory ex parte proceedings upon request of a party seeking a protective order. Moore’s Federal Practice, Section 1604 at 16-63. The House of Representatives changed the mandatory language to permissive in order to prevent burdening the trial courts. The amended proposal was codified in Rule 16(d)(1), Fed.R.Crim.P.
It provides:
“Protective and modifying orders.
“Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as appropriate upon motion by a party. The court may permit the party to make such a showing in whole or in part, in the form of a written statement to be inspected by the judge alone. If the court enters an order to grant relief following such an ex parte showing, the entire text of the party’s statement shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.”
Not all protective order requests will require the use of the ex parte procedure. Ex parte proceedings are generally disfavored and are not to be employed lightly. The procedure would be appropriate *283 only if an adversary hearing would defeat the purpose of the order sought.

Sanctions Fair Trial

The sanction applied by the District Court in its order for disclosure is that if the materials are not disclosed, the defendant will be precluded from offering the same at trial.
Carkulis argues that the imposition of such a sanction deprives him of the right to present a defense and thus violates the Sixth Amendment[6] of the Federal Constitution and Article II, Section 24[7] of the Montana Constitution.
Carkulis argues that the Sixth Amendment is a guaranty to an accused of a right to call witnesses in his favor, without qualification or restraint. Washington v. State of Texas (1967), 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023. The State relies on Rowan v. Owens (7th Cir. 1984), 752 F.2d 1186, 1191, which held that to prevent the witness from testifying is not a per se unreasonable interference with the defendant’s right to defend himself. Again, in U.S. v. Nobles, supra, it was held that the Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; “one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth.”
Once it is determined, as we have determined here, that reciprocal pretrial disclosures subject to constitutional or statutory limitations are permissible, it goes hand in hand with that determination to say that the District Court may exercise its judicial discretion in enforcing such permissible disclosures.
We do not in this opinion pass upon the appropriateness of the sanctions set forth in the District Court in the Carkulis case, for the reason that the sanctions have yet to be applied. See State v. Fendler (App. 1980), 127 Ariz. 464, 622 P.2d 23, 41, for a discussion of appropriate sanctions.

Application of Section 46-15-323(3)

We find no substance in Carkulis’ argument that before Section 46-15-323(4) can be operative, defendant must have acted under Subdivision (3) of that statute.

Disposal

Accordingly, we have considered Carkulis’ petition under our *284 power of supervisory control. Upon consideration the application of Carkulis for a writ of supervisory control directed to the District Court is DENIED, and these proceedings are dismissed.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON, WEBER, GULBRANDSON and McDONOUGH concur.

. “No person shall be compelled to testify against himself in a criminal proceeding . . . .” Article II, Section 25, 1972 Montana Constitution.

. “No person . . . shall be compelled in any criminal case to be a witness against himself . . .” Fifth Amendment to the United States Constitution.

. “No person shall be deprived of life, liberty or property without due process of law.” Article II, Section 17, 1972 Montana Constitution.
“No person . . . shall ... be deprived of life, liberty or property, without due process of law; . . .” Fifth Amendment to United States Constitution.
“. . . nor shall any State deprive any person of life, liberty or property, without due process of law; . . .” Fourteenth Amendment to United States Constitution.

. “The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue hut upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” Fourth Amendment to the United States Constitution.

. “The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures. No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or *286 thing to be seized, or without probable cause, supported by oath or affirmation reduced to writing.” Article II, Section 11, 1972 Montana Constitution.

. “In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and the district wherein the crime shall have been committed,. . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of counsel for his defense.” Sixth Amendment to the United States Constitution.

. “In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed . . .” Article II, Section 24, 1972 Montana Constitution.

FOOTNOTES