No. 92-408

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN THE MATTER OF J.R.T.,
A Youth Under the Age of 18.


APPEAL FROM: Youth Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.

**FILED**

COUNSEL OF RECORD:

For Appellant:

David Ness, Helena

**JUN 7 - 1993**

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

For Respondent:

Hon. Marc Racicot, Attorney General; Carol Schmidt,
Assistant Attorney General, Helena

Mike McGrath, County Attorney; Carolyn Clemens,
Deputy County Attorney, Helena


Submitted on Briefs: April 30, 1993

Decided: June 7, 1993

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

J.R.T. appeals the order denying his petition for post-conviction relief entered in the Youth Court for the First Judicial District, Lewis and Clark County. We affirm.

We restate the sole issue as:

Did the Youth Court err in denying J.R.T.'s petition for post-conviction relief?

In August 1990, J.R.T. was involved in a physical altercation with another youth, R.E., in Helena, Montana. During the affray, R.E. suffered a broken jaw and several lacerations. As a result of the injuries to R.E., a petition was filed alleging J.R.T. was a delinquent youth for having committed the offense of aggravated assault. Following trial on November 21, 1990, the jury determined that J.R.T. committed aggravated assault. Thereafter, the Youth Court adjudicated J.R.T. a delinquent youth. J.R.T. did not appeal the jury verdict or the Youth Court's adjudication.

In April 1992, J.R.T. filed a petition for post-conviction relief with the Youth Court alleging he should receive a new trial based upon newly-discovered evidence. Following a hearing, the Youth Court denied the petition for post-conviction relief. This appeal followed.

Did the Youth Court err in denying J.R.T.'s petition for post-conviction relief?

J.R.T. argues that new evidence--in particular, the testimony of witnesses who did not testify at trial--indicates that he was not the one who caused R.E.'s injuries but, rather, the broken jaw was caused by one or more persons in the crowd who kicked R.E. in the face during the fight. J.R.T. maintains that, if this newly-discovered evidence had been presented to the jury, they may have found that he did not commit aggravated assault in that he did not cause serious bodily injury.

In denying J.R.T.'s petition for post-conviction relief, the Youth Court concluded that a lack of diligence was the reason the evidence was not discovered prior to trial. Therefore, based upon State v. Greeno (1959), 135 Mont. 580, 342 P.2d 1052, the Youth Court concluded J.R.T. failed to satisfy all of the six required factors which control whether a new trial should be granted based upon newly-discovered evidence.

The decision to grant or deny a new trial is within the sound discretion of the trial court. State v. Goettle (1992), 253 Mont. 111, 113, 831 P.2d 595, 596. On appeal, we will not disturb that decision unless an abuse of discretion is shown. Goettle, 831 P.2d at 596.

In Greeno, we held that a petition for a new trial based upon newly-discovered evidence must fall within a particular set of formulated criteria, which were more recently pronounced in State v. Goodwin (1991), 249 Mont. 1, 813 P.2d 953. For a new trial to

3

be granted based upon newly-discovered evidence, it must be shown that:

1. The evidence must have come to the knowledge of the applicant since the trial;

2. It was not through want of diligence that the evidence was not discovered earlier;

3. The evidence is so material that it would probably produce a different result upon another trial;

4. The evidence is not cumulative merely--that is, does not speak as to facts in relation to which there was evidence at the trial;

5. The application must be supported by the affidavit of the witness whose evidence is alleged to have been newly discovered, or its absence is accounted for; and

6. The evidence must not be such as will only tend to impeach the character or credit of a witness.

Goodwin, 813 P.2d at 963.

As discussed, the Youth Court concluded that the evidence J.R.T. alleged was newly-discovered would have been discoverable prior to trial through due diligence. Furthermore, in its Memorandum of Decision, the Youth Court noted that the evidence J.R.T. was relying on at the petition hearing was in conflict with the position he took at trial. Specifically, at trial J.R.T. relied on the defense of justifiable use of force and that he did not have the particular state of mind necessary to prove the charge alleged. At the petition hearing, J.R.T. argued that the newly-discovered evidence showed that R.E.'s broken jaw was caused by one of the spectators who kicked him in the face.

4

Prior to trial, J.R.T. listed twenty-six potential witnesses. Two of these potential witnesses, R.M. and M.M., did not testify at trial. However, both testified at the hearing on J.R.T.'s petition for post-conviction relief. A third witness, B.S., who did testify at trial, was subpoenaed to testify at the hearing on the petition for post-conviction relief. B.S. did not show up at the hearing. Finally, M.N. was not listed as a witness by either J.R.T. or the State prior to trial, and he did not testify at trial. He did, however, testify at the hearing.

At the hearing on J.R.T.'s petition for post-conviction relief, R.M. testified he saw five or six people kick R.E. while he was on the ground. Although R.M. was preliminarily listed as a defense witness, and a praecipe was issued asking the Clerk of Court to issue a subpoena, he was not included in J.R.T.'s revised witness list and was not served with a subpoena. The preliminary witness list indicated that R.M.'s "address [was] unknown, however, [he] may work at the Pizza Hut on Euclid." J.R.T. argues that because R.M.'s address was unknown, and, at the time, R.M. was no longer employed at Pizza Hut, he was not negligent in failing to contact R.M.

"A basic criteria for granting new trials on newly discovered evidence is that the newly discovered evidence <u>could not have been discovered</u> and produced at trial with the exercise of reasonable or due diligence." Carbon County v. Schwend (1984), 212 Mont. 474,

5

478, 688 P.2d 1251, 1253 (emphasis added). We agree with the Youth Court that no evidence was presented to indicate that R.M. could not have been located to be interviewed or to testify at trial. Due diligence requires something more than merely relying on an unknown address and a former place of employment. Reasonable, positive steps must be taken to discover the evidence. The record is devoid of any indication that J.R.T. diligently undertook to find this witness.

Likewise, although M.N. was not listed as a potential witness by either J.R.T. or the State, the record indicates that M.N. was at the fight with another youth who was called by J.R.T. to testify at trial. In addition, J.R.T. had known M.N. for approximately five years prior to trial. Again, J.R.T. presented no evidence which would show that he used due diligence to discover this witness. There is nothing to indicate that M.N. could not have been located.

B.S. testified at trial that he did not see J.R.T. or anyone else kick R.E. Prior to the hearing on the petition for post-conviction relief, B.S. signed a statement for J.R.T.'s lawyer in which he stated that R.E. was kicked in the face by three or four spectators. B.S. believed R.E.'s broken jaw was caused by these kicks or by the ground. However, this statement was not an affidavit. Thus, the statement did not meet the requirement that

6

the witness whose evidence is alleged to have been newly-discovered support that evidence with an affidavit. Goodwin, 813 P.2d at 963.

Furthermore, at trial, the oral surgeon who treated R.E. testified that the broken jaw would be consistent with either being kicked or punched very hard several times. J.R.T. testified at trial that he hit R.E. in the face five or six times and "felt that I hit him pretty good." As a result, the jury could have concluded that the punches to the face caused the broken jaw. Given the inference J.R.T. seeks to draw from B.S.'s statement, it is not reasonable to assume a different result probably would be reached if another trial were held.

Finally, J.R.T. argues that the false statement provided to the police by M.M., and a wrong address supplied by the prosecution, served to mislead his defense counsel, depriving him of an effective defense. Following the fight, M.M. provided a statement to police in which he stated that J.R.T. provoked the confrontation and beat up R.E. At the post-conviction relief hearing, M.M. recanted this story and testified that he originally wanted to get J.R.T. in trouble because "I didn't like him or any of his so-called jock friends."

The Youth Court found that M.M. was not a credible witness. The credibility of a witness is within the exclusive province of the trier of fact. State v. Palmer (1991), 247 Mont. 210, 214, 805 P.2d 580, 582. In addition, although M.M. was listed by the

7

defense as a potential witness, once again, the record does not show that J.R.T. undertook to ascertain his whereabouts prior to trial through due diligence.

J.R.T. has failed to satisfy the requirements enunciated in Goodwin. Accordingly, we hold the Youth Court did not abuse its discretion in denying J.R.T.'s petition for post-conviction relief. The decision of the Youth Court is affirmed.

Chief Justice

We concur:

Justices

8

Justice Terry N. Trieweiler specially concurring.

I concur with the result of the majority opinion, although I do not agree with all that is said therein. I agree that the decision to grant or deny a new trial is within the sound discretion of the trial court and find no abuse of discretion in this case. Therefore, I would also affirm the District Court.

_____
Justice