No. 93-292

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

      Plaintiff and Respondent,

v.

GEORGE FINA,

      Defendant and Appellant.

FILED

AUG 25 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Charles F. Moses; Moses Law Firm, Billings, Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
          Chris D. Tweeten, Ass't Attorney General,
          Helena, Montana

          Dennis Paxinos, Yellowstone County Attorney,
          Shelly J. Briney, Deputy County Attorney,
          Billings, Montana

Submitted on Briefs:  May 25, 1995

Decided:  August 25, 1995

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

George Fina (Fina) appeals from orders of the Thirteenth Judicial District Court, Yellowstone County, denying his motions for a new trial and from the Judgment and Commitment entered on the jury verdict finding him guilty of the offense of deliberate homicide. We affirm.

We restate the issues on appeal as follows:

1. Did the District Court abuse its discretion in denying Fina's motion for a new trial based on newly discovered evidence?

2. Did the District Court abuse its discretion in denying Fina's motion for a new trial with regard to certain evidentiary rulings?

FACTUAL AND PROCEDURAL BACKGROUND

The State of Montana (State) charged Fina and Eric Anderson (Anderson) with the offense of deliberate homicide, alleging that in the nighttime hours of November 26, 1991, or the early morning hours of November 27, 1991, they shot Stacie Kline (Kline) to death in the area of Shepherd-Acton Road and Highway 87 outside of Billings, Montana. Anderson agreed to testify against Fina.

The State's evidence at trial generally showed the following. In November of 1991, Fina and Anderson acquired a number of handguns which had been stolen in a pawn shop burglary. They sold one of the guns, a .22 caliber revolver, to Dick Hallam (Hallam), an acquaintance of Fina's, for $165. Hallam paid only $100 at the time of the transaction. In the early evening hours of November 26, 1991, Fina and Anderson went to Hallam's place of employment in

2

a borrowed red and white Mazda pickup. They were agitated over Hallam's failure to pay the remaining amount and threatened him with 9mm pistols each was carrying.

Following this incident, Fina and Anderson drove to a K-Mart store where Fina purchased a box of 9mm Blazer CCI ammunition. They then proceeded to the Riverboat Casino where they gambled and drank beer. After leaving, they discussed robbing a prostitute.

Anderson drove the pickup to downtown Billings where he and Fina struck up a conversation with Kline, a local prostitute with whom Fina was acquainted. They offered Kline $200 in cash and she agreed to accompany them. The trio proceeded to Shepherd-Acton Road north of Billings, where Anderson and Kline engaged in sexual intercourse on the bench seat of the pickup. Fina did not have intercourse with Kline.

Fina then told Kline that he and Anderson were police officers. He ordered Kline out of the pickup and emptied her pockets of the $200 he and Anderson had given her, plus an additional $7, a motel key and miscellaneous papers. Fina ordered Kline to remove her clothing from the waist up and to face away from the pickup. A few moments later, Anderson shot Kline in the back. Both men then fired at Kline, who fell to the ground.

Fina and Anderson reentered the pickup, drove west and turned around. As they passed Kline, they noticed she was still moving. Anderson stopped the truck and Fina got out and shot Kline twice in the head. The coroner opined that these were the shots that killed Kline. Fina and Anderson then drove east on Shepherd-Acton Road

3

toward Highway 87.

Chris Tucker (Tucker) was walking near the intersection of Shepherd-Acton Road and Highway 87 at about this time. As he reached the intersection, he heard gunfire coming from the west. He observed a vehicle approaching from the direction of the gunfire five to ten minutes later. When the vehicle neared Tucker and the intersection, its lights were turned off and it "ran" the stop sign, increasing in speed. Tucker was picked up approximately 20 to 30 minutes later by a passing Montana Highway Patrol Officer, Lynn Halvorsen (Halvorsen). Halvorsen recorded the time as 11:30 p.m. Tucker later identified the vehicle he had seen as the borrowed red and white Mazda pickup.

A local couple found Kline's body on Shepherd-Acton Road the following morning. The Yellowstone County Sheriff's Office (Sheriff's Office) recovered Blazer CCI and Federal 9mm shell casings, as well as the condom Anderson had used when having intercourse with Kline, from the scene of the crime. The pathologist who performed the autopsy on Kline's body estimated her time of death as the late evening to early morning hours of November 26-27, 1991.

A few days later, Fina's wife contacted Anderson and told him that Fina had been taken to the Sheriff's Office for questioning. Anderson went to Fina's home, took both Fina's and his 9mm pistols, placed them in an athletic bag and threw the bag into the Yellowstone River. The bag and guns ultimately were recovered and Fina's pistol was determined to have fired the fatal shots into

4

Kline's head.

Fina presented an extensive defense case. He testified on his own behalf, denying Anderson's story and asserting that he had been at home at the time the homicide occurred. He also presented witnesses who testified that they had seen Kline talking to two men in a red pickup and, indeed, getting into the pickup with the men, in the early morning hours of November 27, 1991. The testimony was intended to discredit Anderson's version of the events, as well as Tucker's. The jury found Fina guilty of the offense of deliberate homicide.

Fina subsequently filed a motion for a new trial. The District Court denied the motion and Fina appealed.

During the pendency of the appeal, Fina moved this Court to stay the appeal and remand to the District Court for a hearing on whether he was entitled to a new trial on the basis of newly discovered evidence. We granted Fina's motion.

On remand, the District Court held a hearing on Fina's motion for a new trial based on newly discovered evidence. The court subsequently issued an Order and Memorandum denying the motion. Fina appealed.

1. Did the District Court abuse its discretion in denying Fina's motion for a new trial based on newly discovered evidence?

Fina argues that he satisfied this Court's criteria for establishing entitlement to a new trial based on newly discovered evidence and that the District Court erred in denying his motion.

5

A district court's decision to grant or deny a motion for a new trial, including a motion based on newly discovered evidence, lies within the sound discretion of the court. Matter of J.R.T. (1993), 258 Mont. 520, 522, 853 P.2d 710, 711. We will not disturb that decision unless an abuse of discretion is shown. Matter of J.R.T., 853 P.2d at 711.

The newly discovered evidence in this case first came to light in May of 1993, approximately one and one-half years after Kline was killed. Lanor Bordner (Bordner), a postal employee in Billings, contacted Fina's counsel's office at that time. She related that she had seen two men in a small red pickup talking to a girl in the area of Montana Avenue and 27th Street in Billings at approximately 12:10 to 12:15 a.m. on an unknown date around the time Kline's murder had been discovered. She stated that the driver of the pickup was smaller than the passenger, whom she described as being a very large man with a beard; when Fina's counsel described Fina to Bordner, she responded that Fina would not have been the passenger in the pickup. The only description she provided of the prostitute was that the woman was white. She stated that she was sure in her own mind, without a doubt, that the woman she saw was the woman found murdered outside of Billings in November of 1991. She also told Fina's counsel that she had called Crimestoppers with this information several days after the murder, but had no further contact with law enforcement after that time.

In a second statement to Fina's counsel's investigator on July 2, 1993, Bordner pinned down the date of her observations as the

6

early morning of November 27, 1991, through use of her time records from the United States Post Office. She remained positive that the woman who was murdered was the woman she saw at 12:10 to 12:15 a.m. on November 27, 1991, in downtown Billings.

Bordner gave a third statement on November 1, 1993, after being shown a photograph of Kline which had been introduced during Fina's trial. She felt the photograph was of the woman she had seen with the men in the pickup. She also stated that the picture which appeared in the local newspaper on November 30, 1991, was the woman she had seen and that she was able to make the identification at that time. She described the woman's hair as being softly curled.

Later in November of 1993, Bordner gave two statements to Sheriff's Office Detective George Jensen (Jensen), the person to whom she had given her statement when calling Crimestoppers several days after the murder. On November 18, 1993, she described the woman she had seen as thin, with long brown hair, and wearing a skirt and jacket. In her statement the following day, she was unsure of the date she had seen the woman, men and red pickup in downtown Billings.

Bordner's statements were presented during the hearing on Fina's motion for new trial on the basis of newly discovered evidence. She also testified during the hearing. Her testimony was that, at approximately 12:10 to 12:15 a.m. on November 27, 1991, she saw a slender, brownish-haired woman dressed in a short skirt and jacket talking to two men in a red pickup near the corner

7

of Montana Avenue and 27th Street in Billings. When shown the photograph of Kline which had been introduced during Fina's trial, she stated "I believe that that is the girl I saw." She admitted that she had not been certain of the day she had made her observations when she called Crimestoppers, but testified that she was now sure it was November 27, 1991. She recalled having provided a description of the woman during the Crimestoppers call.

Jensen also testified at the hearing on Fina's motion. He testified that his field notes of the Crimestoppers conversation with Bordner (who was, at that time, anonymous) substantively recorded what she had told him at that time. The only description Bordner provided Jensen on November 30, 1991, was that the woman she saw had long hair; Bordner could not describe the woman's face or clothing or give an estimate of her size. Jensen testified that Kline was wearing pants, rather than a skirt, when her body was found.

In State v. Greeno (1959), 135 Mont. 580, 586, 342 P.2d 1052, 1055, we enunciated the six criteria which must be considered in addressing a motion for a new trial based on newly discovered evidence:

> (1) That the evidence must have come to the knowledge of the applicant since the trial; (2) that it was not through want of diligence that it was not discovered earlier; (3) that it is so material that it would probably produce a different result upon another trial; (4) that it is not cumulative merely--that is, does not speak as to facts in relation to which there was evidence at the trial; (5) that the application must be supported by the affidavit of the witness whose evidence is alleged to have been newly discovered, or its absence accounted for; and (6) that the evidence must not be such as will only tend to impeach the character or credit of a

8

witness.

We consistently have applied the Greeno criteria in addressing motions for a new trial on the basis of newly discovered evidence. See, e.g., State v. Redcrow (1990), 242 Mont. 254, 260, 790 P.2d 449, 452-53; State v. Cyr (1987), 229 Mont. 337, 340, 746 P.2d 120, 122. The Greeno criteria are stated in the conjunctive; thus, each must be established before a defendant is entitled to a new trial on the basis of newly discovered evidence. Cyr, 746 P.2d at 122. The District Court determined that Fina had not met the third and fourth Greeno criteria. We focus our attention on those factors.

Fina argues that Bordner's testimony that she observed Kline after the time of Kline's death as established by the testimony of Anderson, Tucker, and Halvorsen and that Fina was not the passenger in the pickup is both material to, and probative of, the ultimate issue of whether he committed the homicide. We do not disagree. However, we agree with the District Court's observation that, while both the time factor and the description of the passenger are material, the fundamental issue is whether Fina committed the homicide we know occurred in the area of Shepherd-Acton Road.

In any event, establishing the probity and materiality of the newly discovered evidence is insufficient to meet the third Greeno factor, which requires that the evidence be so material that it probably would produce a different result in a second trial. Greeno, 342 P.2d at 1056. Stated differently, the third factor requires that the new evidence be so highly probative of the defendant's innocence that its introduction probably would produce

9

an acquittal. <u>Matter of J.R.T.</u>, 853 P.2d at 712. Had Bordner's testimony been the only evidence that Kline was still alive and, indeed, in downtown Billings after the time fixed for Fina and Anderson's presence on Shepherd-Acton Road by the Anderson, Tucker and Halvorsen testimony, the newly discovered evidence may have been sufficiently probative of Fina's innocence to satisfy the third <u>Greeno</u> factor. However, the defense presented witnesses who testified that they saw Kline after 11:30 p.m. on the night of November 26, 1991; several described the passenger in the pickup in such a manner as to preclude the passenger having been Fina. We cannot conclude that Bordner's testimony at trial probably would have resulted in Fina's acquittal. <u>See</u> <u>Greeno</u>, 342 P.2d at 1055.

Moreover, Fina tacitly admits that Bordner's testimony was merely cumulative by noting that her testimony was consistent with that of the "street people" witnesses who described the timing of the encounter between Kline and the men in the pickup and the men themselves. Thus, Bordner's testimony spoke only to facts on which the defense presented evidence at trial. <u>See</u> <u>Greeno</u>, 342 P.2d at 1055.

We conclude that Bordner's testimony did not satisfy the third and fourth <u>Greeno</u> factors. Accordingly, we hold that the District Court did not abuse its discretion in denying Fina's motion for a new trial based on newly discovered evidence.

> 2. Did the District Court abuse its discretion in denying Fina's motion for a new trial with regard to certain evidentiary rulings?

10

Fina's motion for a new trial asserted error with regard to numerous evidentiary rulings by the District Court during the trial. The court denied his motion on these bases.

District courts have broad discretion in determining whether evidence is relevant and admissible; absent a showing of abuse of discretion, we will not overturn the court's determinations. State v. Passama (1993), 261 Mont. 338, 341, 863 P.2d 378, 380 (citation omitted). As set forth above, we also review a court's decision to grant or deny a motion for a new trial for abuse of discretion. Matter of J.R.T., 853 P.2d at 711.

## Plea Bargain Agreement of Robert Lee Norris

Fina contends that the District Court abused its discretion by refusing to admit Robert Lee Norris' (Norris) plea bargain agreement in an unrelated case into evidence. The purported connection between Norris and Fina's case is, at best, unclear, particularly since Norris was not called as a witness by either the State or Fina. Fina's bald assertions that Norris' plea bargain prompted Anderson to plead guilty and testify against Fina are not supported by the record. The only relevance Fina argues is that the Norris plea bargain somehow tends to impeach Anderson's credibility.

The court excluded Norris' plea bargain on the basis that it was not relevant. We agree with the District Court that Fina has established an insufficient connection between Norris' plea agreement and this case to render the agreement relevant to any

11

fact at issue here.  See Rule 401, M.R.Evid.  Because the evidence is not relevant, we need not address the State's contentions that the evidence is inadmissible hearsay.

We conclude that the District Court did not abuse its discretion in refusing to admit Norris' plea bargain agreement.


Psychiatric Report of Anderson

Fina argues that the court erred in refusing to compel disclosure, for purposes of introduction at Fina's trial, of a psychological evaluation of Anderson performed in conjunction with Anderson's own defense.  Fina sought to use the report to impeach Anderson's credibility.  Relying primarily on Smith v. McCormick (9th Cir. 1990), 914 F.2d 1153, the District Court refused to compel production of the privileged report from Anderson's counsel.

Fina cites no cases in which a criminal defendant obtained a psychiatric evaluation for purposes of his own defense, pled guilty, testified against a former co-defendant and was compelled to disclose his psychiatric evaluation for purposes of impeaching his testimony.  Nor does he cite to any authority under which a psychiatric evaluation privileged when made subsequently becomes "unprivileged."  He apparently relies on Gilpin v. McCormick (9th Cir. 1990), 921 F.2d 928, and State v. Hess (1992), 252 Mont. 205, 828 P.2d 382, for the proposition that Anderson's psychiatric report should have been disclosed for use at trial.  Neither case supports his position.

In Gilpin, the federal habeas corpus petitioner contended that

12

the state trial court's refusal to compel psychiatric examinations of two child sex abuse victims violated his rights to due process and to confront his accusers; the Ninth Circuit held otherwise. Gilpin, 921 F.2d at 931-32. In Hess, the defendant put her mental state in issue by relying on the affirmative defense of justifiable use of force and offering psychological evidence that she suffered from battered woman syndrome. We held that Montana statutes authorized the district court to compel the defendant to undergo psychological evaluation by the State's expert for rebuttal purposes only and that the Fifth Amendment did not prohibit such an action. Hess, 828 P.2d at 386, 388. Neither Gilpin nor Hess is relevant to the issue before us.

Fina's reliance on State ex rel. Carkulis v. Dist. Ct. (1987), 229 Mont. 265, 746 P.2d 604, also is misplaced. In Carkulis, we upheld Montana statutes requiring certain reciprocal discovery between a criminal defendant and the State against various constitutional challenges. Carkulis, 746 P.2d at 605. Carkulis is inapposite here because the case presently before us does not involve an effort by the State to obtain discovery from Fina. Furthermore, the reciprocal discovery statutes require the prosecution and the defendant to disclose specified information to each other; they impose no duty to disclose on other persons or entities. See §§ 46-15-322 through 46-15-327, MCA. Here, the State was not in possession of Anderson's privileged psychiatric report.

We conclude that the District Court did not abuse its

13

discretion in refusing to compel disclosure of Anderson's psychiatric report.

Cross-Examination of Lisa Coldwell

Fina argues that the District Court abused its discretion in restricting his cross-examination of Lisa Coldwell (Coldwell), one of Anderson's roommates. Fina asked Coldwell about a conversation in which Anderson stated he had killed people in California. The State objected on the basis that the testimony sought was both hearsay and irrelevant, and constituted impermissible character evidence. Fina responded that he wanted Coldwell to confirm Anderson's earlier testimony admitting that he made the statement and that the statement was a lie. The District Court refused to allow Coldwell's testimony.

Fina apparently contends that his question to Coldwell about Anderson's statements constituted proper cross-examination for purposes of impeaching Anderson's testimony. No analysis or authority is presented to support this particular contention. Fina also asserts parenthetically that Anderson's statements were "hardly hearsay;" again, no analysis or authority is advanced for this assertion. Similarly, Fina's statement that "we believe [the restriction on cross-examination] impairs the due process rights of George Fina" is unsupported by analysis or authority as required by Rule 23(a)(4), M.R.App.P. Counsel's general statement that the District Court erred in this regard, "based upon case decisions cited in this section of our brief," is totally inadequate to

14

permit this Court to address the issue as raised, given that "this section" of Fina's brief is seventeen pages in length and addresses seven subissues.

We conclude that the District Court did not abuse its discretion by restricting Fina's cross-examination of Coldwell.

Law Enforcement Testimony

Fina argues that the District Court abused its discretion by refusing to allow him to call law enforcement officers to testify regarding prior consistent and inconsistent statements of various witnesses who had testified during the State's case-in-chief. Fina does not identify the particular witnesses to whom he refers; nor does he state with particularity whether the testimony he sought from the officers about each witness concerned a prior consistent statement or a prior inconsistent statement. He apparently desired to ask the officers, regarding each witness, whether he or she had made prior consistent or inconsistent statements in an attempt to buttress the witnesses' credibility. Fina relies generally on Rule 801(d)(1), M.R.Evid., and State v. Scheffelman (1992), 250 Mont. 334, 820 P.2d 1293.

It is beyond dispute that hearsay is not admissible except as specifically provided by rule or statute. Rule 802, M.R.Evid. Rule 801(d)(1), M.R.Evid., provides that a prior statement by a witness is not hearsay if the declarant testifies at trial and is subject to cross-examination regarding the prior statement, and the statement is:

15

(A) inconsistent with the declarant's testimony, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of subsequent fabrication, improper influence or motive, or (C) one of identification of a person made after perceiving the person[.]

Fina does not argue that he sought admission of any known inconsistent statement of a witness who testified. He apparently sought to use the officers' testimony to buttress, rather than to impeach, the witnesses' credibility. Thus, Rule 801(d)(1)(A), M.R.Evid., is not applicable. Fina does not rely on Rule 801(d)(1)(C), M.R.Evid.

Focusing on Rule 801(d)(1)(B), M.R.Evid., it is clear that witnesses' prior statements which are consistent with their testimony may be admissible if "offered to rebut an express or implied charge against the declarant of subsequent fabrication, improper influence or motive . . . ." We interpreted Rule 801(d)(1)(B), M.R.Evid., in Scheffelman and refined that interpretation in State v. Lunstad (1993), 259 Mont. 512, 857 P.2d 723. We emphasized in Lunstad that prior consistent statements are admissible only when a specific motive to fabricate is alleged and the prior consistent statements were made before the time the alleged motive to fabricate arose. Lunstad, 857 P.2d at 726.

In the present case, Fina does not establish that any specific motive to fabricate was raised at trial regarding any of the witnesses whose statements are at issue here. He also does not establish that any express or implied charge was raised that any or all of the witnesses were improperly influenced or had improper motives. Thus, Fina has not established that the evidence he

16

sought to introduce through the law enforcement officers comes within the exception to the hearsay rule contained in Rule 801(d)(1)(B), M.R.Evid. For that reason, we need not address whether Fina met the other requirement of Rule 801(d)(1), M.R.Evid., that the declarant "is subject to cross-examination concerning the statement."

We conclude that the District Court did not abuse its discretion in refusing to allow Fina to call law enforcement officers to testify regarding prior consistent and inconsistent statements of various witnesses.

## Testimony by Fina Regarding James West

Fina argues that the District Court abused its discretion by refusing to allow him to testify regarding a conversation he had with his friend James West (West). West testified during the State's case that Fina admitted killing Kline during a conversation between the two men early in December, 1991; West also testified that, at that time, he believed Fina was lying about committing the offense. Fina cross-examined and recross-examined West. He did not challenge West's version of his own part in the conversation or suggest in any way that, in fact, West had admitted some complicity in the Kline killing to Fina during the conversation.

During Fina's testimony, the State objected to Fina's attempt to testify regarding West's part in the conversation. While Fina's intent with regard to this testimony is not altogether clear, it appears that Fina would have testified that West admitted to some

17

responsibility for, or complicity in, the Kline homicide during the conversation. The court refused to allow the testimony on hearsay grounds.

Fina argues that the District Court's ruling prevented him from "testify[ing] in his own defense under the Constitution." Fina's opening brief on appeal cites to no legal authority, and advances no legal analysis, in support of his argument. He states only that "[w]e rely upon all of the case decisions on this issue previously set forth in this brief under different headings." In this regard, we observe that no other issue raised relates to either the right of a defendant to testify in his own defense or the parameters of such a right. It is not this Court's job to search a 40-page brief and scrutinize every case cited therein in an effort to discover a case which may, in some manner, support an appellant's argument.

Similarly, Fina's reply brief says that the State's reliance on Rule 613(b), M.R.Evid., "is not appropriate under these circumstances." No analysis of either the rule, the State's position, or the District Court's ruling is advanced.

Fina having failed to establish any error, we conclude that the District Court did not abuse its discretion in refusing to allow Fina to testify regarding alleged statements by West.


Statement of Darren DeMarie

Darren DeMarie (DeMarie), an inmate in the Yellowstone County Detention Facility, gave a written statement to a defense

18

investigator which contained statements by Anderson tending to implicate West and exonerate Fina. During the trial, Fina moved to subpoena DeMarie and was advised by the court that the court's permission was not required. DeMarie's counsel advised that, if called as a witness, DeMarie would invoke the Fifth Amendment. Fina did not call DeMarie as a witness; instead, he moved for admission of DeMarie's statement. The District Court denied the motion. Fina argues that the statement was admissible pursuant to Rule 804, M.R.Evid.

Rule 804, M.R.Evid., enumerates exceptions to the hearsay rule when a declarant is unavailable as a witness. Specifically, Rule 804(a)(1), M.R.Evid., provides that a declarant is unavailable as a witness if exempted from testifying concerning the subject matter of his or her statement by ruling of the court on the ground of privilege.

Here, DeMarie was not called as a witness and, therefore, did not invoke the Fifth Amendment. The court made no ruling exempting DeMarie from testifying on the ground of privilege. Accordingly, DeMarie was not an unavailable declarant under Rule 804(a)(1), M.R.Evid., and his statement was inadmissible.

We conclude that the District Court did not abuse its discretion in refusing to admit DeMarie's statement.

Having concluded that the court did not abuse its discretion with regard to the evidentiary rulings Fina challenges, we hold that the District Court did not abuse its discretion in denying Fina's motion for a new trial on those bases.

19

Affirmed.

_____
                        Justice

We concur:

_____
        Chief Justice

_____

_____

_____
        Justices

20