No. 98-130

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 139N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JOSH BUTTERFLY,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Ronald L. Bissell (argued), Cascade County Public Defender's Office,

Great Falls, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General,

John Paulson (argued), Assistant, Attorney General, Helena, Montana

Brant Light, Cascade County Attorney,

Kirsten LaCroix, Deputy Cascade County Attorney, Great Falls, Montana

Argued: May 13, 1999

Submitted: May 17, 1999

Decided: June 14, 1999

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. Josh Butterfly (Butterfly) appeals from the judgment and sentence entered by the Eighth Judicial District Court, Cascade County, on a jury verdict finding him guilty of three of the offenses charged and not guilty of the fourth. We affirm.**

**¶3. We address the following issues:**

**¶4. 1. Did the District Court abuse its discretion in admitting certain testimony by the investigating sheriff's deputy?**

**¶5. 2. Did the prosecution have a duty to object to certain hearsay testimony elicited on cross-examination of the investigating deputy?**

**¶6. 3. Did the District Court abuse its discretion in instructing the jury on child witness testimony?**

**¶7. The State of Montana (State) charged Butterfly in a four-count information with committing the offenses of sexual intercourse without consent, sexual assault, endangering the welfare of children and unlawful transactions with children.**

According to the affidavit in support of the State's motion for leave to file the information, the offenses occurred during the late evening of April 20 or the early morning hours of April 21, 1996, at Butterfly's residence. The sexual offenses charged were premised on Butterfly allegedly having intercourse with, and sexually assaulting, C.S., who was 15 years old at the time. The endangering the welfare of a child offense was based on the State's allegation that Butterfly furnished beer to C.S. The unlawful transaction with a child charge was premised on Butterfly having furnished beer to Ryan Wiggins (Ryan), who was 18 at the time and under the legal age for possessing alcoholic beverages.

¶8. Butterfly was arrested in March of 1997 and trial was set for July 21, 1997. On the morning of trial, Butterfly filed a motion *in limine* seeking, among other things, to preclude investigating officers from testifying to hearsay statements made by the victims. The written motion did not specify the expected testimony and cited only generally to Rule 801, M.R.Evid. During argument on the motion regarding the expected testimony from investigating officers, Butterfly argued that he wanted to avoid those witnesses "just repeating the things that [other] witnesses are going to testify to[.]" The court observed that it was difficult to make such a ruling prior to hearing the testimony and recommended that Butterfly make any objection based on repetitive or cumulative evidence at the appropriate time during trial. The State responded that it might introduce some of the testimony to which Butterfly objected as prior consistent statements and the District Court noted that such statements were permissible to bolster testimony under some circumstances; in other circumstances, however, the court cautioned that if the testimony became too cumulative, it probably would sustain an objection on that basis.

¶9. The State's case at trial was presented through C.S., C.S.'s mother, two law enforcement officers and the doctor who had examined C.S. Ryan did not testify. The State's evidence indicated that Ryan was living with C.S. and his family near Fairfield, Montana, at the time of the events at issue. C.S. had a learning disability and a speech impediment and was in a special education resource room at school. Ryan and C.S. were befriended by Butterfly through C.S.'s older brother James, and C.S.'s mother thought Butterfly was a good friend for the boys. Butterfly lived with his grandmother in a trailer near Great Falls, Montana.

¶10. On April 20, 1996, Butterfly spoke to C.S.'s mother and invited James, Ryan and C.S. to visit him that evening. James was unavailable, but Ryan and C.S.

accepted the invitation. C.S.'s mother, a night shift nurse at Deaconess Hospital (the Hospital) in Great Falls, dropped them off at Butterfly's on her way to work before 11:00 p.m. and was to pick them up in the morning.

¶11. Butterfly arrived home with a bag of 22-ounce bottles of beer soon after the other two boys got there. The three went out for some food, then returned to Butterfly's and went to a shed behind the trailer where Butterfly had a stereo, couch and bed. They drank beer and listened to music. C.S. became nauseous after drinking the beer and went to sleep; Butterfly put him on the bed fully clothed. C.S. woke up when he heard Butterfly and Ryan arguing, threw up in a garbage can and then "passed out again."

¶12. C.S. next awoke to find his overalls unbuttoned and pulled down, and Butterfly touching his butt and penis. Butterfly tried to kiss C.S. and urged C.S. to kiss him; C. S. refused and tried to move away from Butterfly on the bed. Butterfly then started sucking on C.S.'s penis; shaking and scared, C.S. managed to push Butterfly away and get out of bed. He shouted to Ryan to wake up and the boys left the shed. C.S. told Ryan what had occurred and they decided to walk to the Hospital.

¶13. On arrival at the Hospital at approximately 6:00 a.m. on April 21, 1996, C.S. told his mother what had happened and she called the police and arranged to have C. S. examined by a doctor. C.S. spoke first with Great Falls Police Officer Mark Thatcher and later with Deputy Debra Baumgart, the investigating officer from the Cascade County Sheriff's Office. Deputy Baumgart then interviewed Ryan and C.S.'s mother, and tried to locate Butterfly; she was told that he was in treatment in Browning. Subsequent efforts to contact him were unsuccessful.

¶14. Butterfly did not testify on his own behalf. He presented an alibi defense of being in Browning at the time of the incidents through testimony from his grandmother, mother, two aunts, a cousin and several family friends.

¶15. The jury ultimately found Butterfly guilty of the three charged offenses relating to C.S.: sexual intercourse without consent, sexual assault and endangering the welfare of a child. It found him not guilty of the charge of unlawful transactions with a minor involving Ryan. After a sentencing hearing, the District Court sentenced Butterfly to 25 years in the Montana State Prison, all suspended, and ordered him to enter a sexual offender treatment program within 30 days. It also sentenced him to a

total of 18 months in the Cascade County Jail, all suspended, and imposed conditions. Judgment was entered accordingly and Butterfly appeals.

¶16. 1. Did the District Court abuse its discretion in admitting certain testimony by Deputy Baumgart?

¶17. Butterfly contends that the District Court improperly permitted Deputy Baumgart to testify to hearsay statements Ryan made to her, particularly her statements on direct examination that Ryan identified Butterfly as being present that night and supplying beer to himself and C.S. Our standard in reviewing a trial court's evidentiary rulings is whether the court abused its discretion. State v. Widenhofer (1997), 286 Mont. 341, 349, 950 P.2d 1383, 1387 (citation omitted).

¶18. On direct examination, Deputy Baumgart testified she interviewed Ryan and he was aware of the allegations that Butterfly had performed oral sex on C.S. Immediately thereafter, the State inquired whether Ryan had identified the perpetrator of the alleged acts on C.S., that is, who was with him that night. Defense counsel objected on hearsay grounds and the District Court overruled the objection. Since the question requested merely a "yes" or "no" answer, rather than the substance of Ryan's identification, the question did not call for a hearsay answer. Thus, the objection was premature and the District Court did not abuse its discretion in overruling the objection.

¶19. The State then inquired again whether Ryan identified "who was at the shed that night[.]" Deputy Baumgart answered "Yes. He identified himself, [C.S.] and [Butterfly]."

To the extent the answer disclosed the substance of Ryan's identification, it was nonresponsive to, and beyond the scope of, the question. Moreover, it was hearsay, which is defined in Rule 801(c), M.R.Evid., as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Defense counsel did not object to the answer, however, on either basis.

¶20. It is axiomatic that a timely and specific objection must appear of record before this Court will consider assertions of error regarding the admission of evidence. *See* Rule 103(a)(1), M.R.Evid.; § 46-20-104, MCA. Butterfly did not object to Deputy

Baumgart's testimony that Ryan identified Butterfly as being at the shed that night. Furthermore, his contention on appeal that his earlier objection was intended to be an objection to the entire line of questioning is unpersuasive. Similarly, his argument that his objection was the same as that made in his motion *in limine* on the morning of trial is negated by the record which, as noted above, reflects that the motion was to exclude testimony from investigating officers which would be merely cumulative of that given by the victims. Obviously, since Ryan did not testify at trial, Butterfly's objection to Deputy Baumgart's testimony about Ryan's statements was not that the testimony was cumulative and, consequently, it was not the same as that made in Butterfly's motion *in limine*. We conclude that Butterfly waived the right to raise this issue on appeal.

¶21. For the same reasons, we need not address at any length Butterfly's contentions on appeal that Deputy Baumgart's subsequent direct testimony regarding Ryan's statement that Butterfly had supplied beer to himself and C.S. that night was inadmissible hearsay because (1) the State did not establish the "unavailability" criteria set forth in Rule 804(a)(5), M.R.Evid.; and (2) the statement was not a "statement against interest" admissible as an exception to the hearsay rule pursuant to Rule 804(b)(3), M.R.Evid. The record reflects that Butterfly's only objection during the State's direct examination of Deputy Baumgart was the premature hearsay objection referenced above. Having failed to object at trial on either of the two bases for which he now contends, Butterfly has waived the right to do so on appeal. *See* Rule 103(a)(1), M.R.Evid.; § 46-20-104, MCA.

¶22. Finally, Butterfly asserts that the State failed to meet its burden under *Widenhofer* for establishing unavailability and indicia of reliability relating to the statements of an unavailable hearsay declarant for Confrontation Clause purposes. We decline to address this argument.

¶23. The record reflects that Butterfly did not make a Confrontation Clause argument against the admissibility of Ryan's statement in the District Court. Under § 46-20-701(2), MCA, an assertion of error affecting constitutional rights may not be noticed on appeal if it was not objected to in the trial court, unless it meets one of the specified statutory exceptions. None of the exceptions exists in the present case. Moreover, while this Court will invoke the common law plain error doctrine on appeal in extraordinary circumstances, even absent a contemporaneous objection (*see, e.g.,* State v. Finley (1996), 276 Mont. 126, 137, 915 P.2d 208, 215), Butterfly has

not requested plain error review of the unavailability and indicia of reliability questions he now argues violated his constitutional confrontation and fair trial rights.

¶24. We conclude that Butterfly has not established error in the District Court's admission of Deputy Baumgart's testimony on direct examination.

¶25. 2. Did the State have a duty to object to certain hearsay testimony elicited on cross-examination of Deputy Baumgart?

¶26. On cross-examination of Deputy Baumgart, Butterfly asked a series of questions about the substance of Ryan's statements during her interview with him and the deputy responded. On redirect examination, the State inquired further into Ryan's statements to Deputy Baumgart. Defense counsel objected on hearsay grounds and the State responded that the hearsay was elicited during cross-examination. The District Court overruled the objection, and the State's redirect examination about Ryan's statements to Deputy Baumgart continued. In his opening brief on appeal, Butterfly contends that the State had a duty to object to his cross-examination of the deputy eliciting inadmissible hearsay testimony and that, had it discharged that duty, the State would not have been able to elicit further hearsay testimony during its redirect of Deputy Baumgart.

¶27. The appellant in a case carries the burden of establishing error by the trial court. State v. Carter (1997), 285 Mont. 449, 461, 948 P.2d 1173, 1180. Moreover, Rule 23(a)(4), M.R.App.P., requires an appellant to cite to authority for positions advanced on appeal. Butterfly has cited to no authority, in his briefs or at oral argument, in support of his novel theory that the prosecution has a duty to object to testimony elicited by the defense which may prove advantageous to the prosecution. Having failed to advance authority supporting his argument, Butterfly cannot establish error in this regard. *See* State v. Fina (1995), 273 Mont. 171, 183, 902 P.2d 30, 38.

¶28. In his reply brief, Butterfly attempts to shift gears and argue a different theory, namely, that his own cross-examination cannot be used by the State to "open the door" to inadmissible testimony. He contends that State v. Campbell (1978), 178 Mont. 15, 582 P.2d 783, mandates a conclusion that the State's redirect examination of Deputy Baumgart regarding Ryan's statements resulted in the admission of inadmissible hearsay which prejudiced his defense.

¶29. The problem with Butterfly's argument is that it is not responsive to anything argued in the State's answer brief. As noted above, the issue raised by Butterfly in his opening brief was that the State had a duty to object to his cross-examination of Deputy Baumgart regarding Ryan's statements. The State's answer brief merely pointed out that Butterfly cited to no authority in support of his position and that its redirect of the deputy regarding Ryan's statements was entirely proper as within the scope of Butterfly's cross-examination on the same topic.

¶30. A "reply brief must be confined to new matter raised in the brief of the respondent." Rule 23(c), M.R.App.P. The rationale underlying this Rule is that it is unfair to allow a party to raise arguments in a reply brief to which the opposing party does not have an opportunity to respond. Thus, we do not consider portions of a reply brief which are not in conformance with Rule 23(c), M.R.App.P. *See* Denend v. Bradford Roofing & Insulation (1985), 218 Mont. 505, 509-10, 710 P.2d 61, 64. For these reasons, we decline to address this argument further.

¶31. We conclude that Butterfly has failed to establish error in the admission of Deputy Baumgart's redirect testimony.

¶32. 3. Did the District Court abuse its discretion in instructing the jury on child witness testimony?

¶33. The State offered a "child witness testimony" instruction which related to the testimony of C.S., who was 16 years old at the time of trial. Butterfly objected to the instruction on the basis that it was intended for younger children. The District Court overruled the objection and gave the proposed instruction. Butterfly asserts error.

¶34. Our standard in reviewing jury instructions in criminal cases is whether the instructions, taken as a whole, fairly instruct the jury on the law applicable to the case. Moreover, district courts have broad discretion when instructing juries. State v. Patton (1996), 280 Mont. 278, 286, 930 P.2d 635, 639.

¶35. The instruction at issue here provided:

A child is not disqualified as a witness simply by reason of age. There is no precise age which determines a child's competency. This depends upon the child's capacity and intelligence, understanding of the difference between truth and falsehood, and appreciation

of his/her duty to tell the truth.

As with other witnesses, you are the sole judge of the credibility of a child who testifies. You may consider not only the child's age but his/her demeanor on the stand, capacity to observe facts and to recollect them, ability to understand questions put to him/her and to answer them intelligently, whether he/she impresses you as having an accurate memory and recollection, whether he/she impresses you as a truth-telling individual, and any other facts and circumstances which impress you as significant in determining the child's credibility. On the basis of your consideration you may give the child's testimony such weight as you in your judgment think it is entitled.

The instruction is included in Montana's pattern criminal jury instructions as Montana Criminal Jury Instruction No. 1-014.

**¶36. Butterfly correctly contends that the Model Criminal Jury Instructions for the United States District Courts of the Ninth Circuit do not contain or recommend a child witness testimony instruction, on the theory that credibility should be left to the jury under the general credibility instruction. *See* 9th Cir. Crim. Jury Instr. 8.3.1 (1997); 9th Cir. Crim. Jury Instr. 8.31 comment (1997). Nonetheless, Butterfly's objection in the District Court was not to the existence or continued viability of the instruction in Montana's pattern criminal jury instructions; rather, he argued that the child witness testimony instruction was not intended for a child of 16 years like C. S. We do not address issues raised for the first time on appeal. State v. Schaff, 1998 MT 104, ¶ 26, 288 Mont. 421, ¶ 26, 958 P.2d 682, ¶ 26 (citations omitted).**

**¶37. Furthermore, Butterfly advances no authority in support of his argument in the District Court that giving a child witness testimony instruction is improper when the child is 16 rather than, perhaps, 12 or 14. The instruction broadly covers any witness who has not attained adulthood and leaves the question of whether the instruction should be given to the discretion of the trial court.**

**¶38. Having failed to advance authority supporting his argument on this issue, Butterfly cannot establish error in this regard. *See Fina*, 273 Mont. at 183, 902 P.2d at 38. We conclude that the District Court did not abuse its discretion in instructing the jury on child witness testimony.**

**¶39. Affirmed.**

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER