

DA 11-0356

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 176

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

ROBERT ARTHUR WING,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Seventeenth Judicial District,
                    In and For the County of Valley, Cause No. DC 10-32
                    Honorable John C. McKeon, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

        Johnna K. Baffa; Van de Wetering & Baffa, P.C., Missoula, Montana

        For Appellee:

        Steve Bullock, Montana Attorney General; Mardell Ployhar, Assistant
        Attorney General, Helena, Montana

        Nick Murnion, Valley County Attorney, Glasgow, Montana


                        Submitted on Briefs:  July 11, 2012

                                      Decided:  August 14, 2012

Filed:

            _____

                         Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Appellant Robert Arthur Wing appeals from his conviction in the Seventeenth Judicial District Court, Valley County, of felony driving while under the influence of alcohol (fourth or subsequent offense) in violation of § 61-8-401, MCA. Wing argued at trial that he had not been driving on the day of his arrest, and that another man, Michael Halverson, had been the driver before the vehicle was disabled. We consider the following issue dispositive of this appeal:

¶2 *Did the District Court abuse its discretion by preventing a defense witness from testifying, pursuant to M. R. Evid. 804(b)(3), about a statement against interest made by Halverson?*

FACTUAL AND PROCEDURAL BACKGROUND

¶3 On October 31, 2010, the Valley County Sheriff's Department responded to a report of a disabled vehicle near the intersection of Highway 2 and Vandalia Road, between Hinsdale and Glasgow, Montana. Upon arrival, the deputy observed Wing exit from the driver side of a 1998 Chevy Malibu with a flat tire. Halverson was seated in the front passenger seat of the car, and several beer containers--some empty, and some unopened--were visible in the back seat. A registration check revealed that the car was owned by Wing's mother, Helen. Both men appeared to be highly intoxicated, and both were on probation with "no alcohol" restrictions as conditions of their probation.

¶4 The rim of the wheel with the flat tire was damaged, apparently from continued driving on the flat tire, and the car had sustained a large amount of body damage. Wing

2

told the deputy that they had tried to flag down help to the west of the present location, but gave up and then drove on. The deputy asked Wing if he had just driven as far as he could with a flat tire, and Wing responded, "Yeah, um yeah, so I could get off the road . . . ." Wing agreed to other assertions the deputy made, but did not expressly indicate that he had been driving.

¶5 Wing, who was having difficulty maintaining his balance, explained to the deputy that he and Halverson had been waiting in the car for about an hour. He also offered that he had "slammed" three beers during this hour of waiting. He subsequently failed a series of field sobriety tests and was placed under arrest. He then began repeatedly protesting that he had not been driving. At this time, Halverson exited the vehicle and stated that Wing had not been driving.

¶6 Despite having already placed Wing under arrest, the deputy asked for clarification as to who had been driving. Halverson's answer is unclear in the deputy's video recording, but the deputy's response to Halverson's inaudible answer was, "He wasn't? Were you?" The deputy directly asked Halverson if he had been driving, but Halverson declined to answer. The deputy then administered an initial breath test to Halverson. The test revealed a blood-alcohol content of .228. Halverson was also placed under arrest--for suspected violation of the conditions of probation.

¶7 At trial in the District Court, the sole issue was whether Wing had been in "actual physical control" of the vehicle. Halverson was called as a defense witness, but he invoked his Fifth Amendment right against self-incrimination and refused to testify. Wing's mother, Helen, testified that she had loaned her vehicle to Halverson so that he

3

could go home and feed his cats, and that Wing had been in the passenger seat when the duo drove away. Wing's counsel attempted to elicit testimony regarding a statement by Halverson to Helen that he was the driver of the car that night. The District Court sustained the prosecution's hearsay objection and disallowed the testimony.

¶8 Wing testified that he had not driven the car that evening. He explained that after the car had become disabled, Halverson had gotten out to check the trunk for a spare tire. Wing testified that he entered the driver side of the car to look for Halverson's cell phone under the seat, and that while he was doing so, Halverson seated himself in the passenger seat after failing to locate the spare tire.

¶9 The deputy testified that he retrieved the car keys "between the driver's side and passenger side on the floorboards." Wing contested this issue at trial, alleging that the police video shows the deputy leaning "only slightly into the passenger side door" to retrieve the keys. The prosecution's video index, which had not been disclosed prior to trial, also contained the heading "found keys on passenger side." Wing moved to dismiss on this basis, arguing that the prosecution had withheld material evidence. The District Court denied the motion.

¶10 Wing was convicted and sentenced to eight years in prison. He now appeals from his conviction.

## STANDARD OF REVIEW

¶11 This Court reviews a district court's rulings on admissibility of evidence for abuse of discretion. *State v. Jenkins*, 2011 MT 287, ¶ 4, 362 Mont. 481, 265 P.3d 643. Where the rationale for excluding evidence is based on the interpretation of an evidentiary rule

or statute, our review is de novo. *State v. Dist. Ct. of the Eighteenth Jud. Dist.*, 2010 MT 263, ¶ 31, 358 Mont. 325, 246 P.3d 415.

ANALYSIS

¶12 Wing claims that Halverson admitted to "others out of court, including Helen Wing, that he, not Robert Wing, had been the driver of the vehicle on the night in question." He claims that the District Court erred by excluding testimony regarding Halverson's statement to Helen.

¶13 *Did the District Court abuse its discretion by preventing a defense witness from testifying, pursuant to M. R. Evid. 804(b)(3), about a statement against interest made by Halverson?*

¶14 "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M. R. Evid. 801(c). Under the foundational policy of requiring that testimony be given by witnesses in open court, under oath, and subject to cross-examination, hearsay is not admissible into evidence. 2 *McCormick on Evidence* § 245 (Kenneth S. Broun ed., 6th ed., Thomson/West 2006). There are, of course, exceptions when there are independent indications of the reliability or trustworthiness of the out-of-court statement. Among other exceptions to the hearsay rule, M. R. Evid. 804 addresses situations in which the declarant is unavailable to testify as a witness. The relevant exception in this case is the "statement against interest." A statement by an unavailable witness is not excluded from evidence when it is:

5

[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

M. R. Evid. 804(b)(3).

¶15 Accordingly, to be admissible under M. R. Evid. 804(b)(3), Halverson's alleged statement against interest must meet three tests: (1) Halverson must be unavailable as a witness; (2) the statement must so far tend to subject Halverson to civil or criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) because it was offered to exculpate Wing, the statement must be corroborated by circumstances clearly indicating its trustworthiness.

¶16 Admission of hearsay evidence under M. R. Evid. 804 first requires a determination that the declarant is "unavailable." *State v. Stuit*, 277 Mont. 227, 231, 921 P.2d 866, 869 (1996). M. R. Evid. 804(a)(1) provides that a declarant is unavailable as a witness if exempted from testifying concerning the subject matter of his or her statement by ruling of the court on the ground of privilege.

¶17 Halverson was called to the witness stand and directly asked whether he was driving on the night in question. He answered, "I refuse . . . and assert my right under the Fifth Amendment against self incrimination, and, therefore decline to answer that question." He was then excused by the District Court. The State acknowledges that, once Halverson's claim of privilege had been sustained, he was "unavailable" within the

6

meaning of M. R. Evid. 804(a)(1). *Cf. State v. Fina*, 273 Mont. 171, 183-184, 902 P.2d 30, 38 (1995). Accordingly, our inquiry turns to whether his statement would tend to subject him to criminal liability to an extent that a reasonable person would not have made it unless he believed it was true.

¶18    Wing attempted at trial to introduce testimony from his mother, Helen, regarding the alleged statement made to her by Halverson, in which Halverson admitted to being the driver on the night in question:

> DEFENSE COUNSEL:  Did you talk to Mr. Halverson about how your car got off the highway and on Vandalia road turnoff?
>
> HELEN:  Yeah. He said he had –
>
> PROSECUTION:  Objection, hearsay, Your Honor.
>
> THE COURT:  The objection is sustained as to what Mr. Halverson may say. The answer, though, called for is just a yes or no response, so I'll have the question read back to you. [Court reporter read back original question.]
>
> HELEN:  Yes.
>
> DEFENSE COUNSEL:  Did he admit to you that he was the driver?
>
> PROSECUTION:  Objection, hearsay.
>
> DEFENSE COUNSEL:  Statement against interest.
>
> HELEN:  Yes.
>
> THE COURT:  Just a moment. Do not respond. The objection's sustained. If there was any response it must be stricken from the record. I will advise the jury that you may not consider that response in your deliberations. Go ahead, Mr. Piocos.
>
> DEFENSE COUNSEL:  Did Mr. Halverson tell you that he was driving drunk on October 31st, 2010?

7

PROSECUTION: Objection, hearsay.

THE COURT: Sustained.

DEFENSE COUNSEL: I have nothing further, your Honor.

Wing argues that the statement he sought to introduce constituted a statement against interest under M. R. Evid. 804(b)(3), and should not have been excluded.

¶19 The underlying logic in providing a hearsay exception to statements against interest is that such statements "have as their circumstantial guaranties of trustworthiness the fact that persons generally do not make statements against their interest unless those statements are true." *State v. La Pier*, 208 Mont. 106, 110, 676 P.2d 210, 212 (1984). One factor that influences this analysis is whether the statement solidly inculpates the declarant in an offense. *See e.g. United States v. Nazemian*, 948 F.2d 522, 530 (9th Cir. 1991). "[T]he very fact that a statement is genuinely self-inculpatory . . . is itself one of the 'particularized guarantees of trustworthiness' that makes a statement admissible under the Confrontation Clause." *Williamson v. United States*, 512 U.S. 594, 605, 114 S. Ct. 2431, 2437 (1994).

¶20 The information collected during the initial roadside investigation was likely sufficient to establish that Halverson was intoxicated, a violation of his probation. Accordingly, further evidence that he had been the driver not only tended to subject him to a revocation, but to additional criminal liability for the DUI and a much higher potential sentence. It also could possibly lead to civil liability for any damages to the car. Rather than simply having probative value in a trial against him, Halverson's alleged statement is a confession and clearly against his own interest. Taken together with the

8

evidence established at the time of Wing's arrest, we conclude that Halverson's alleged statement likely would not have been made by a reasonable person in his position unless he believed it to be true.

¶21    This Court has had scant previous opportunity to interpret "corroborat[ed by] circumstances clearly indicat[ing] . . . the trustworthiness of the statement" within the meaning of M. R. Evid. 804(b)(3). In *La Pier*, 208 Mont. at 111, 676 P.2d at 213, we held that this Court "will ordinarily defer to the discretion of the District Court on matters of admission of evidence, particularly where the court is determining circumstantial guaranties of trustworthiness, unless an abuse of discretion is clearly shown." Because the District Court provided no justification for its ruling in the present case, we will look to the record to adduce any corroboration for Halverson's statement.

¶22    The State cites to *State v. Powers*, 233 Mont. 54, 57-58, 758 P.2d 761, 762-763 (1988), for the proposition that an uncorroborated hearsay statement is properly excluded when it is made by one defendant, indicating that the codefendant was not involved in the offense. The State also points to Halverson initially lying to the deputy about his identity and his unwillingness to state on the record that he was driving, as indications that he is untrustworthy and simply trying to obfuscate the issue to help his friend Wing. But a number of factors corroborate Halverson's statement: (1) approximately 40 minutes elapsed between the report to the sheriff's office of a disabled vehicle and when the officer arrived on the scene; thus, there was plenty of time for Halverson and Wing to move around; (2) the statements made by Halverson at the scene, and documented in the police video, that Wing was not driving; (3) Helen's testimony that she gave Halverson

9

the keys and he drove the vehicle away from her home; (4) the deputy's testimony that the keys were equally available to both men within the car; and (5) the video evidence that the keys were retrieved from the passenger side of the vehicle, where Halverson had been seated. Still, the State argues that these pieces of evidence do not "clearly indicate the trustworthiness of the statement."

¶23 While the above factors do not conclusively establish the trustworthiness of Halverson's statement, they do corroborate the alleged statement. As such, they are indications of trustworthiness and therefore support a conclusion that, given the importance to Wing's case, Helen's testimony should have been allowed. Helen's testimony was directly pertinent to the critical issue to be decided by the jury: was Wing driving the vehicle? The State's arguments certainly call into question the evidentiary weight of the statement by Halverson, but the weight of the evidence should have been left to the jury. And because (1) Halverson was unavailable as a witness, (2) his alleged statement unquestionably could expose him to criminal liability, and (3) the alleged statement was clearly corroborated by other evidence that indicates trustworthiness, we conclude the District Court abused its discretion when it sustained the State's objection.

¶24 While trial courts have the obligation to determine indications of trustworthiness, those considerations must be made in the context of the entire proceeding and with a view toward the ultimate issue that must be decided by the jury. Halverson's alleged statement against interest should have been admitted pursuant to M. R. Evid. 804(b)(3), and the jury should have been given the opportunity to weigh all the evidence.

CONCLUSION

¶25    Based on the foregoing, we reverse the District Court's judgment and remand for further proceedings consistent with this Opinion.


/S/ MIKE McGRATH

We concur:


/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE